UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>TERRY WAYNE HENRIKSON,<br><br>　　　　　　Defendant. | CR. 15-50084-JLV<br><br>ORDER |

**INTRODUCTION**

Before the court is defendant Terry Henrikson's motion to dismiss the indictment as time-barred due to the running of the statute of limitations (Docket 27) and a motion for a Daubert[1] hearing.  (Docket 29).  The government opposes both motions.  See Dockets 36 & 37.  The court addresses each motion separately.

**MOTION TO DISMISS**

The government charged Mr. Henrikson in a three-count indictment, alleging theft of government property (count 1), false statement (count 2) and concealment of events affecting benefits (count 3).  (Docket 2).  To the extent Mr. Henrikson moves for the dismissal of count 2 as time-barred, the motion is denied.  Count 2 alleges offenses occurring "[o]n or about between November 5, 2011, and November 30, 2013."  Id.  Mr. Henrikson was indicted on June 16,

---

[1]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

2015, well within the five-year statute of limitations for non-capital offenses. See 18 U.S.C. 3282(a).

In resolving defendant's motion to dismiss count 1, theft of government property, and count 3, concealment of events affecting benefits, the court must determine whether the offenses constitute a continuing offense. It is undisputed that those counts allege offense conduct far outside the five-year statute of limitations. See id.

The United States Supreme Court held "statutes of limitations normally begin to run when the crime is complete." Toussie v. United States, 397 U.S. 112, 115 (1970) (internal quotation marks and brackets omitted) (quoting Pendergast v. United States, 317 U.S. 412, 418 (1943)).[2] The United States Court of Appeals for the Eighth Circuit held that generally "a criminal statute of limitations begins to run 'when each element of that offense has occurred.'" United States v. Bennett, 765 F.3d 887, 893 (8th Cir. 2014), cert. denied, 135 S. Ct. 1463 (2015) (quoting United States v. Gonzalez, 495 F.3d 577, 580 (8th Cir. 2007).

---

[2]Toussie is the seminal case on the issue of continuing offenses. In Toussie, the defendant was indicted eight years after his eighteenth birthday for failing to register for the draft. Toussie, 397 U.S. at 113-14. All males between the ages of eighteen and twenty-six were required to register. Id. at 113. The statute of limitations for failing to register was five years. Id. at 114. The Court held that failing to register for the draft was not a continuing offense and the statute of limitations barred the government from prosecuting the defendant eight years later. Id. at 122-23.

However, "[t]here is a recognized exception to this rule for so-called continuing offenses." Gonzalez, 495 F.3d at 580 (citing United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999)). "An offense is deemed 'continuing' for statute of limitations purposes only when (a) 'the explicit language of the substantive criminal statute compels such a conclusion'; or (2) 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.' " Yashar, 166 F.3d at 875 (quoting Toussie, 397 U.S. at 115). "The hallmark of a continuing offense is that it perdures beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." Id. (quoting Toussie, 397 U.S. at 122).

The Supreme Court cautions "the doctrine of continuing offenses should be applied in only limited circumstances [as] . . . the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." Toussie, 397 U.S. 115 (brackets, internal quotation marks and citations omitted). The court is mindful that "criminal limitations statutes are to be liberally interpreted in favor of repose." Id. (internal quotation marks and citations omitted).

I. **Count 1: Theft of Government Property**

Count 1 of the indictment charges:

On or about between April 1, 1989, and November 30, 2013, at Rapid City, in the District of South Dakota, the defendant, Terry

3

> Wayne Henrikson, did embezzle, steal, purloin, and knowingly convert to his own use money from the Social Security Administration, a department and agency of the United States, namely, Social Security Title II disability payments made to him to which he knew he was not entitled, having a value in excess of $1,000, all in violation of 18 U.S.C. § 641.

(Docket 2 at p. 1).

The first paragraph of 18 U.S.C. § 641 provides:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof . . . . Shall be fined under this title or imprisoned not more than ten years, or both . . . ."

18 U.S.C. § 641.

There is a split of authority as to whether theft of government property in violation of 18 U.S.C. § 641 constitutes a "continuing offense" for statute of limitations purposes. The court can find no Eighth Circuit case law on the issue of whether theft of government property in violation of § 641 constitutes a continuing offense. See United States v. Turner, No. 4:13-CR-00227-01-BRW, 2014 WL 641768, at *1 (E.D. Ark. Feb. 18, 2014) (noting that "the Eighth Circuit Court of Appeals has not ruled on the issue.").

With regard to the first Toussie factor, courts on both sides of the issue are in agreement that "nothing in the language of section § 641 indicates that Congress intended it to be a continuing offense." United States v. Crary, No. CR 13-35-M-DLC, 2013 WL 6054607, at *3 (D. Mont. Nov. 15, 2013) (finding § 641

4

not to constitute a continuing offense); cf. United States v. Gibson, No. 08-03057-01-CR-S-DGK, 2008 WL 4838226, at *3 (W.D. Mo. Nov. 6, 2008) (finding § 641 to constitute a continuing offense).  The difference of opinion lies in the interpretation of the second Toussie factor regarding whether the nature of the crime involved is such that Congress must assuredly have intended it be treated as a continuing offense.

Under one line of cases, courts look to the specific characteristics of a defendant's alleged underlying conduct in determining whether § 641 constitutes a continuing offense.  The Fourth Circuit case of United States v. Smith, best illustrates this reasoning.  373 F.3d 561, 567-68 (4th Cir. 2004) (per curiam), cert. denied, 543 U.S. 1123 (2005).  In Smith, the defendant failed to report the death of his mother to the Social Security Administration ("SSA") and he continued to collect and use the social security funds deposited in their joint account.  Id. at 563, 567-68.  The Fourth Circuit held:

> At least in those cases where the defendant created a recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government, and maintained that scheme without need for affirmative acts . . . we think that Congress must have intended that such be considered a continuing offense for purposes of the statute of limitations.

Id. 567-68.  The Fourth Circuit clarified its holding by noting "[t]his is not to say that all conduct constituting embezzlement may necessarily be treated as a continuing offense as opposed to merely 'a series of acts that occur over a period

5

of time'; indeed, it may well be that different embezzlement conduct must be differently characterized in this regard." Id. at 568.

The rationale of the Smith case has been relied on by other district courts both within and outside of the Eighth Circuit. See, e.g., United States v. Trang Huydoan Phan, 754 F. Supp. 2d 186, 190 (D. Mass. 2010) (finding that "while § 641 is not inherently and automatically a continuing offense, it is in this case where the violation consists of an uninterrupted scheme wrongfully to receive SSI payments which continued well into the statute of limitations period."); Gibson, 2008 WL 4838226, at *3 (noting that "[a]s in Smith, defendant in the instant case is charged with creating a recurring, automatic scheme of embezzlement under § 641 by conversion of funds voluntarily placed in his possession by the government, and maintained that scheme without any need for affirmative acts linked to any particular receipt of funds."); Turner, 2014 WL 641768, at *1 (finding that "the nature of the alleged offense—stealing SSI benefits by misrepresenting material facts on an application—is such that Congress must have intended courts treat it as a continuing offense."); United States v. Askia, No. 1:13-CR-10004, 2015 WL 9685586, at *5 (W.D. Ark. Nov. 10, 2015), report and recommendation adopted, No. 13-CR-10004, 2016 WL 110586 (W.D. Ark. Jan. 8, 2016) (relying on Turner in finding that § 666(a)(1)(A) constituted a continuing offense).

Under a second line of cases, courts rely only on the statutory language of the substantive offense in determining whether Congress must assuredly have

intended it be treated as a continuing offense.  In the case of Yasher, the defendant, an employee of the City of Chicago, received wage payments, health insurance coverage and other federal benefits for which he did little or no work. 166 F.3d at 875 (describing the defendant as a "ghost payroller").  Mr. Yasher was charged with having violated 18 U.S.C. § 666.  Id.  The Seventh Circuit held "for offenses that are not continuing offenses under Toussie, the offense is committed and the limitations period begins to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct."  Id. at 879-80.  In support of its holding, the Seventh Circuit reasoned:

> [T]he active or passive nature of a defendant's actions has never been the benchmark of a continuing offense under Toussie. Instead, the focus is on the statutory language.  If the statute describes an offense that by its nature continues after the elements have been met, then the offense is a continuing one regardless of the nature of defendant's actions beyond that point.

Id. at 877; see also Toussie 397 U.S. at 122.

The Seventh Circuit further noted:

> [A] prosecutorial decision regarding the scope of the charge would determine the running of the limitations period.  In that manner, the statute of limitations, designed as a control on governmental action, would instead be defined by it.  Virtually any criminal actions that extend over time could fall within this expansive definition depending upon how a prosecutor chose to charge a case. A prosecutor has a great deal of discretion in deciding whether to charge a course of conduct as a single offense or as multiple offenses. . . .  Under the government's argument, that charging decision could delay the running of the limitations period on the discrete offenses. For instance, a series of drug sales could be charged as a single scheme. The government could then wait to prosecute until well beyond five years after the initial drug sales, as

>long as at least one overt act occurred within the last five years, and regardless of whether that one act constituted an element of the charged crime. With this approach, the limitations period would be virtually unbounded.

Yasher, 166 F.3d at 878-79 (footnote and citations omitted).

Many district courts have endorsed and further refined the Seventh Circuit's reasoning in Yasher. In the case of United States v. Bundy, a case involving Social Security Disability Insurance ("SSDI") benefits, the court determined the question of whether the first paragraph of § 641 constitutes a continuing offense is analyzed without reference to the defendant's underlying conduct. Criminal No. 08-196-P-H, 2009 WL 902064, at *10 (D. Me. Mar. 31, 2009). The court concluded the first paragraph of § 641 did not constitute a continuing offense under Toussie. Id. at 11.

In United States v. Pease, the court found "[u]nder the second part of the Toussie test, the Court must look to the nature of the offense codified in § 641—conversion—and determine whether it is of such a nature that Congress must assuredly have intended that it be treated as a continuing offense." No. CR-07-757-PHX-DGC, 2008 WL 808683, at *2 (D. Ariz. Mar. 24, 2008). The court noted that "[i]n making this determination, '[i]t is not the active or passive nature of a defendant's actions that matters, but rather whether the statute describes an offense that by its nature continues after the elements have been met.' " Id. (quoting United States v. Rivlin, No. 07 CR. 524 (SHS), 2007 WL 4276712, at *1 (S.D.N.Y. Dec. 5, 2007)).

8

In Crary the district court, citing Pease, concluded § 641 did not constitute a continuing offense for statute of limitations purposes. 2013 WL 6054607, at *3-4. The court first noted "there is nothing about the specific conduct charged in a given case that could possibly shed light on Congress' intent. To the contrary . . . reference to the nature of the offense charged creates the possibility that the intent of Congress may be obscured by a prosecutor's charging decision." Id. at *3 (internal quotation marks and citations omitted) (quoting United States v. W.R. Grace, 429 F. Supp. 2d 1207, 1243 (D. Mont. 2006) (citing Yashar, 166 F.3d at 879). The court further reasoned that § 641 is very broad and encompasses many types of conversion, theft or embezzlement of various types of government property, and therefore, "[a]lthough some crimes falling within this statute may continue after the elements have been met, many others would be complete upon one criminal action such as stealing property or embezzling funds on one occasion." Id. at 4. Based on nature of the crime as defined by the statute, the court was unable to determine whether Congress must assuredly have intended § 641 to be treated as a continuing offense. Id.

The court identified the policy reasons which disfavor looking beyond statutory language where the statute of limitations is at issue. Id. ("Those policy reasons include 'limit[ing] exposure to criminal prosecution to a fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions, to discourage prosecution based on facts obscured by the

9

passage of time, and to encourage law enforcement officials promptly to investigate suspected criminal activity.' ") (quoting Yashar, 166 F.3d at 879).

In United States v. Powell, the court found "§ 641 is not a continuing offense, either because of explicit Congressional language or by its inherent nature." 99 F. Supp. 3d 262, 267 (D.R.I. 2015). The court concluded the Smith line of cases attempts to create a "tri-part" test for continuing offenses by creating a third test regarding the "circumstances of the individual case" in addition to the "explicit intent" and "inherent nature" tests authorized by Toussie. Id. at 266. The court found there "is nothing inherent in embezzlement that requires a prolonged duration. Similarly, multiple acts of embezzlement do not increase the evil in any way different from multiple holdups of the same convenience store or multiple shopliftings from the same retail establishment." Id. at 267.

Within the District of South Dakota, Judge Piersol recently determined embezzlement in violation of 18 U.S.C. § 656 was not a continuing offense under either a Yasher or Smith analysis. United States v. Johnson, No. CR 97-40009, 2015 WL 7302235, at *6 (D.S.D. Nov. 18, 2015). In reaching this conclusion, Judge Piersol noted "[t]he fact that embezzlement can be completed in one distinct transaction undermines the notion that it is inherently a continuing crime. In contrast to a continuing offense like conspiracy, the unlawful taking of funds by embezzlement is completed each time there is a taking. It does not 'clearly contemplate a prolonged course of conduct.' " Id. at 6 (quoting Toussie, 397 U.S. at 116).

The court finds the rationale underlying Yashar and its progeny well-reasoned and persuasive. Theft of government property as contained in the first paragraph of § 641 does not to constitute a continuing offense under Toussie for statute of limitations purposes.[3] As the government indicates, Mr. Henrikson can be found guilty of theft of government property under § 641 if he is determined to have voluntarily, intentionally and knowingly embezzled, stole or converted the money to his own use. (Docket 37 at p. 3 n.2); see also Eighth Circuit Manual of Model Jury Instructions § 6.18.641. This is a broad range of proscribed conduct, and the court cannot say, based on the statute, that Congress must assuredly have intended the offense be treated as a continuing one. See Crary, 2013 WL 6054607, at *4.

The policy consideration supporting a narrow interpretation of the statute of limitations are also directly applicable in Mr. Henrikson's case as he is being charged for conduct allegedly occurring in 1989—more than twenty-five years ago. Id.; see also Yashar, 166 F.3d at 879 (referencing a virtually unbound limitations period). The fact that embezzlement, theft and conversion can each be completed in one discrete transaction undermines the government's contention that § 641 is a continuing offense. See supra; Johnson, 2015 WL 7302235, at *6.

---

[3]The court notes Mr. Henrikson was only charged with violating paragraph one of § 641. Compare Docket 2 (count 1), with 18 U.S.C. § 641 (the first paragraph); see also Pease 2008 WL 808683, at *3.

The court grants Mr. Henrikson's motion to dismiss count 1 of the indictment to the extent it seeks to exclude conduct occurring before June 16, 2010.[4]

## II. Count 3: Concealment of Events Affecting Benefits

Count 3 of the indictment charges:

> On or about between April 1, 1989, and November 30, 2013, at Rapid City, in the District of South Dakota, the defendant, Terry Wayne Henrikson, in a matter within the jurisdiction of the Social Security Administration, having knowledge of the occurrence of an event affecting his initial and continued right to receive payment of Social Security Title II disability payments, concealed and failed to disclose such event with the intent to fraudulently secure payment when no payment was authorized, to wit: Terry Wayne Henrikson intentionally concealed the fact that he owned various businesses that resulted in self-employment income that would cause his income to exceed the allowable levels for continued receipt of disability benefits, all in violation of 42 U.S.C. § 408(a)(4).

(Docket 2 at p. 2).

The charging statute provides:

> [Whoever] having knowledge of the occurrence of any event affecting (1) his initial or continued right to any payment under this subchapter, or (2) the initial or continued right to any payment of any other individual in whose behalf he has applied for or is receiving such payment, conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized . . . .

42 U.S.C. § 408(a)(4).

---

[4]Because the court found the first paragraph of § 641 not to be a continuing offense, the applicable statute of limitations is five years. 18 U.S.C. § 3282(a). The indictment in Mr. Henrikson's case is dated June 16, 2015. (Docket 2). The court subtracted five years to arrive at June 16, 2010.

The crux of count 3 is Mr. Henrikson's alleged concealment and failure to disclose events that would have caused him to become ineligible for his SSDI benefits. This crime, by its nature, continues until the concealment is discovered or revealed. Bundy, 2009 WL 902064, at *12. The crime of concealment of events affecting benefits, like the traditional continuing offenses of conspiracy and escape, continues until it is affirmatively ended. Id.; see also Pease, 2008 WL 808683, at *2 ("Classic examples of continuing offenses include conspiracy, escape, kidnapping, bigamy, and crimes of possession. . . . These crimes, once committed, continue in effect until affirmatively ended.").

No circuit split exists as to whether the concealment of events affecting benefits under 42 U.S.C. § 408(a)(4) constitutes a continuing offense for statute of limitations purposes. It does. The court agrees with the well-reasoned opinions on the issue. See, e.g., Bundy, 2009 WL 902064, at *12; United States v. Morris, No. 4:10-CR-00090-SWW-1, 2014 WL 2560617, at *5 (E.D. Ark. June 6, 2014).[5] Mr. Henrikson's motion to dismiss count 3 of the indictment for violating the statute of limitations is denied.

## MOTION FOR A DAUBERT HEARING

Mr. Henrikson moves for a hearing pursuant to Daubert, 509 U.S. 579. (Docket 29). Mr. Henrikson asserts a Daubert hearing is necessary to

---

[5]The court cites the Morris case for the limited purpose that it found 42 U.S.C. § 408(a)(4) to constitute a continuing offense. As noted above, the court finds the reasoning of the Seventh Circuit persuasive on the issue of whether the first paragraph of 18 U.S.C. § 641 is a continuing offense.

demonstrate that the government's theory of the case as presented through expert testimony is based on flawed and unreliable methodology. Id. at 1. Specifically, Mr. Henrikson asserts the testimony of his expert, Jim Leach,[6] is necessary to refute any expert testimony provided by Special Agent Jason Piercy of the SSA's Office of Inspector General and Claims Representative Tyler Bowling. Id. at 1-2. Agent Piercy is the government's case agent in Mr. Henrikson's criminal case, and he identified Mr. Bowling as a person who could testify as a subject matter expert regarding Title II disability benefits in his Report of Investigation. See Docket 32-20 at p. 10. The government argues Mr. Henrikson's motion is premature because it has not filed any expert witness notices in the case. (Docket 36 at p. 1). The government asserts the arguments espoused in Mr. Leach's affidavit also are premature at this stage of Mr. Henrikson's criminal proceeding as they have no bearing on the government's burden of proof on the elements of the charged offenses. Id. at 3.

Mr. Henrikson's motion for a Daubert hearing is premature. The government has not yet filed any expert witness notices in the case, and it asserts neither Agent Piercy nor Claims Representative Bowling will be called as expert witnesses—only as fact witnesses. Id. at 1. A Daubert hearing is not the appropriate forum to examine the government's fact witnesses. If the

---

[6]The court is aware Mr. Leach is representing Mr. Henrikson in ongoing litigation with the SSA regarding the termination of his SSDI benefits. See Terry W. Henrikson v. Carolyn W. Colvin, Acting Commissioner of Social Security, 15-5094-JLV, Docket 1. On February 13, 2016, Mr. Henrikson provided the court with a notice of dismissal of his civil claim because the SSA had "acted on [his] request for reconsideration." Henrikson, 15-5094, Docket 6.

government notices an expert witness, Mr. Henrikson is free to move for a Daubert hearing.  If Mr. Henrikson intends to have Mr. Leach testify as an expert witness (Docket 38 at p. 5), he should file a notice of expert witness consistent with Fed. R. Crim. P. 16(b)(1)(C).  The government can raise Daubert challenges or file whatever pretrial motions it deems appropriate.

## ORDER

Good cause appearing, it is

ORDERED that defendant's motion to dismiss (Docket 27) is granted in part and denied in part.  The motion is granted to the extent it seeks to exclude alleged criminal conduct occurring prior to June 16, 2010, on count 1.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that defendant's motion for a Daubert hearing (Docket 29) is denied as premature.

Dated May 25, 2016.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE